HAVERFIELD, Judge.
Appellant seeks review of an adverse final judgment in this action for a declaratory decree. The facts giving rise to this controversy are as follows.
In 1966 Cal Kovens and Bert Sager owned all of the outstanding stock of Keith Investments, Inc. which owned the facilities of the appellant, North Miami General Hospital, Inc. (hereinafter referred to as NMG). In November of that year, NMG entered into an agreement to purchase all of the stock from Kovens and Sager, appellees herein, and executed in favor of the appellees a promissory note and mortgage encumbering the land, build *568 ing and assets of the hospital. Pursuant to the terms of these three instruments, Kov-ens and Sager were to be paid annually for a IS year period a minimum of $233,333 or Yz of the “adjusted net profit”[1] derived from the hospital’s operations, whichever was greater. In the years 1967, 1968, 1969 and ultimately in the year 1970, appellees received as their annual payments Yz of the “adjusted net profit.”
In late 1969, the U.S. Government asserted a claim against NMG that Medicare had overpaid the hospital $1,800,000 in connection with Medicare payments made to the hospital in the years 1966 through 1969. In 1970 an additonal claim of $660,000 was asserted by Medicare. NMG informed Kovens and Sager of the claims and contended that if NMG had to make any credits or rebates to Medicare for payments received in 1966 through 1970, ap-pellees would be responsible to NMG for Yz of that amount because they would have been overpaid under the promissory note for those years. Kovens and Sager denied any responsibility or liability to NMG under the Medicare claim.
An additional dispute between the parties arose in 1970 with respect to the hospital’s management contract[2] which precipitated litigation [Circuit Court Case No. 70-16020] being instituted by the appellees against NMG. As a result of this action, NMG refused to pay appellees the 1970 annual payment due under the terms of the 1966 promissory note. Appellees then filed another complaint [Circuit Court Case No. 71-2593] against NMG to recover the 1970 payment due them. Kovens and Sager asserted therein claims against some of the trustees of the hospital for the wrongful charging of sums against NMG, which reduced the amount of net profits of the hospital and in turn reduced the amount paid and payable to Kovens and Sager under the terms of the promissory note.
All of the foregoing disputes, claims and pending litigation resulted in the parties executing a, modification of the 1966 promissory note which reads in part as follows:
“MODIFICATION OF NOTE MADE AT MIAMI, FLORIDA, DECEMBER 1, 1966, BY NORTH MIAMI GENERAL HOSPITAL, INC., TO CAL KOVENS AND BERT SAGER
“THIS MODIFICATION AGREEMENT made and entered into this 19th day of February, 1971, by and between NORTH MIAMI GENERAL HOSPITAL, INC. (the ‘Maker’) and CAL KOVENS and BERT SAGER (the ‘Payees’), their heirs, successors, legal representatives and assigns;
“WITNESSETH:
“WHEREAS, the Maker has heretofore made that certain Promissory Note at Miami, Florida, dated December 1, 1966, to CAL KOVENS and BERT SAGER, a copy of which note, consisting of 8 pages, is attached hereto as Exhibit A; and
“WHEREAS, payments have heretofore been made on account of said note; and
“WHEREAS, uncertainty and disputes exist and have arisen as to the amount due and to become due pursuant to said Promissory Note; and
“WHEREAS, the parties desire to make certain the amount of the balance of the Note remaining unpaid; and
“WHEREAS, the parties, for valuable consideration and value received, do de *569 sire to modify said note, effective this day.
“NOW, THEREFORE, in consideration of the mutual covenants of the parties and to settle such uncertainty and disputes and for other valuable consideration; receipt whereof is hereby acknowledged by the Maker and the Payees, the parties covenant and agree as follows:
“1. Said Promissory Note is, effective this 19th day of February, 1971, modified to provide and read as follows:
‘The Maker, for value received, promises to pay to the order of CAL KOVENS (as to 95 per cent) and unto BERT SAGER (as to 5 per cent) the principal sum of Six Million Two Hundred Fifty Thousand Dollars ($6,250,000.00), together with interest thereon at four per cent (4%) per an-num from February 19, 1971, as follows :
******
“2. It is understood and agreed that Six Million Two Hundred Fifty Thousand Dollars ($6,250,000.00) is the remaining unpaid indebtedness upon said Promissory Note and that no payment made on or prior to February 19, 1971, shall be deemed to reduce the said balance of said Promissory Note, the Maker having heretofore been given credit therefor in such fashion as to create the said balance of Six Million Two Hundred Fifty Thousand Dollars ($6,250,-000.00).
“3. Except as above set forth in this modification agreement, all of the other terms, covenants and conditions of said Promissory Note of December 1, 1966, are hereby cancelled.”
After the execution of this agreement and dismissal of the pending lawsuits, NMG on December 20, 1972 filed the instant complaint for declaratory judgment to determine its rights under the purchase agreement and promissory note entered into between NMG and Kovens and Sager. In essence, the complaint alleged Medicare was claiming NMG had received overpay-ments in excess of $1,600,000, which was being contested by NMG, and that Kovens and Sager had denied any liability or responsibility for repayment of any sum to NMG or Medicare. Kovens and Sager filed an answer denying liability and alleging the February 19, 1971 modification agreement clearly settled and disposed of all claims of the parties against each other regarding past or future payments made or due under the promissory note and mortgage. The cause came on for non-jury trial, and the trial judge rendered the following final judgment after a detailed recitation of facts.
* * * * * *
“The Court finds, from the foregoing facts and applicable law, that there is no liability, responsibility or obligation of the respondents, Cal Kovens and Bert Sager, to pay, reimburse, or account to the petitioner, North Miami General Hospital, Inc., for any claim that petitioner, North Miami General Hospital, Inc., might be required to pay to Medicare for the years 1966 through 1970, or for any year thereafter.
“IT IS, THEREUPON, CONSIDERED, ORDERED AND ADJUDGED that final judgment is entered in favor of the respondents, Cal Kovens and Bert Sager, and against the petitioner, North Miami General Hospital, Inc. and the respondents shall go hence without day. The costs of these proceedings are hereby taxed against the petitioner, the amount to be set and determined upon appropriate motion and order.”
Appellant first urges as error the transfer of this cause from Judge Christie to Judge Grossman for no apparent reason in that said transfer was a violation of the blind filing system requiring a retrial of the cause.
This case originally was assigned to Judge Christie. Thereafter, counsel for *570 appellee Sager filed a motion requesting the administrative judge to make an appropriate assignment of the cause to Judge Wiseheart. Thereafter, the administrative judge entered an order transferring the present case and case no. 70-16020 to Judge Grossman for' further proceedings and trial.
The record with respect to this issue reflects that at no time did counsel for appellant raise any question or objection to the transfer nor does counsel for appellant now contend that appellant was prejudiced in any way thereby. Furthermore, the transferring of causes from one judge to another in the circuit court is a matter of internal administration of that court and does not affect the validity of the orders or judgments entered. See Bankers Life and Casualty Company v. Gaines Construction Co., Fla.App.1966, 191 So.2d 478. Hence, we reach the conclusion that this point of appellant is without merit.
Appellant in its complaint alleged that it was in doubt as to its rights and those of Kovens and Sager under the promissory note (as modified), mortgage, and purchase agreement and then prayed for a declaratory judgment determining the rights of the respective parties under said documents. After a careful reading of the applicable statutes, §§ 86.011 and 86.051, Fla.Stat., F.S.A..[3], we have interpreted same to confer jurisdiction upon the circuit court over the subject matter in the cause before us. In addition, we note that the appellant instituted this action for declaratory relief, proceeded to a trial on the merits, and then, upon petition for rehearing, for the first time raised this issue of jurisdiction over the subject matter and thereby is estopped from raising this issue on appeal. See Shurden v. Thomas, Fla.App. 1961, 134 So.2d 876; see also In re Estate of Dalton, Fla.App.1971, 246 So.2d 612 at 614.
Thus, this contention of appellant must fail.
For its third and final point on appeal, appellant alleges the trial judge erred in finding and holding that NMG had released Kovens and Sager from all liability for possible Medicare repayments.
By filing the subject complaint appellant sought to determine its rights and those rights of appellees under the terms of the promissory note as modified, to which rights appellant was in doubt. Appellees for the years 1966 through 1970 received annual payments equal to 2/3 of the annual “adjusted net profits” pursuant to the formula outlined in the promissory note and purchase agreement. Appellant took the position that if Medicare should prevail on its claimed overpayment to NMG of a total *571 of $2,587,772 or any part thereof, then Ys of that amount returned or credited to Medicare should be repaid by appellees to NMG (or should be offset against the amount due appellees under the modification of note agreement), because, if not, then NMG would have overpaid that amount to appellees in the annual payments of 1966-1970. On the other hand, Kovens and Sager had contended in one of their suits filed against NMG that some of the trustees of NMG were guilty of misconduct in the operation of the hospital resulting in a dissipation of the profits thereby unlawfully reducing the amount of the payments to which they were entitled under the terms of the promissory note and purchase agreements.
Paragraph 2 of the modification agreement executed on February 19, 1971 clearly reflects that $6,250,000 was fixed as the remaining unpaid principal debtedness and “that no payment made on or prior to February 19, 1971 shall be deemed to reduce said balance ...”
It is apparent, after reading the above portion of the modification agreement that the agreement eliminated appellant’s claim as to the possible overpayments to the ap-pellees if Medicare should prevail on all or part of its claim and likewise it eliminated appellees’ assertion that the annual payments were reduced because of a dissipation of the profits due to the alleged misconduct on the part of some of the trustees in the operation of the hospital. The subject agreement simply precludes adjustments of future payments by reason of past payments which prior to the execution thereof the parties contended ultimately may have been either excessive or inadequate.
Therefore, we find that the trial judge was correct in finding that there is no liability, responsibility or obligation of appel-lees to reimburse appellant for any claim it might be required to pay to Medicare and thereupon entering final judgment in favor of appellees.
For the reasons stated and upon the authorities cited hereinabove, the judgment is affirmed.
Affirmed.

. The definition thereof was set out in detail in the purchase agreement.

. NMG had a management contract with Hospital Management Corporation which was owned by the appellees, and the hospital trustees attempted to discharge the hospital administration and some of the other personnel in the employ of Hospital Management Corporation.

. “86.011 Jurisdiction of circuit court
“The circuit courts have jurisdiction to declare rights, status and other equitable or legal relations whether or not further relief is or could be claimed. No action or procedure is open to objection on the ground that a declaratory judgment is demanded. The court’s declaration may be either affirmative or negative in form and effect and such declaration has the force and effect of a final judgment. The court may render declaratory judgments on the existence, or nonexistence:
“(1) Of any immunity power, privilege or right; or
“(2) Of any fact upon which the existence or nonexistence of such immunity, power, privilege or right does or may depend, whether such immunity, power, privilege or right now exists or will arise in the future. Any person seeking a declaratory judgment may also demand additional, alternative, coercive, subsequent or supplemental relief in the same action. [Emphasis Supplied]
“86.051 Enumeration not exclusive
“The enumeration in sections 86.021, 86.031 and 86.041, Florida Statutes, does not limit or restrict the exercise of the general powers conferred in section 86.011, Florida Statutes, in any action where declaratory relief is sought. Any declaratory judgment rendered pursuant to this chapter may he rendered by way of anticipation with respect to any act not yet done or any event which has not yet happened, and in such case the judgment shall have the same binding effect with respect to that future act or event, and the rights or liability to a/rise therefrom, as if that act or event had already been done or had already happened before the judgment was rendered." [Emphasis Supplied]